MABERRY and POLLARD *vs.* GODFREY SHISLER, garnishee of BOWERS & GLASBY.

A voluntary assignment in contemplation of insolvency and preferring creditors, made in Pennsylvania, will not be sustained by our courts as against a subsequent attachment by a citizen of this state of the insolvent's effects here.

If by such assignment a benefit is reserved to the assignor to the prejudice of his creditors, it vitiates the deed.

ATTACHMENT case. Case stated.

Bowers & Glasby, merchants of the city of Philadelphia, being in insolvent circumstances, and in contemplation of insolvency, executed an assignment of all their goods and chattels, rights and credits, to John B. Stryker, of said city, for his sole benefit, to secure the payment of the sum of $20,471 71 due and owing from the said Bowers & Glasby to the said Stryker; with power to sell, dispose of, assign, transfer, &c., sue for, collect, &c.; and as soon as sufficient money should be collected or realized from the said sales, &c. to pay the said debt and all charges, and also a commission of five per cent. for collection, the balance, if any, should revert and become payable to the said assignors, or be applied in any other manner they might direct. This assignment was dated 28th January, 1832, and at that time Bowers & Glasby were indebted to Maberry & Pollard, merchants of the same city, in the sum of $———. Maberry & Pollard prosecuted a writ of foreign attachment out of this court against Bowers and Glasby, returnable to the May term, 1832, under which writ the sheriff attached a debt due from Godfrey Shisler, a citizen of this state, to the said Bowers and Glasby. The attachment was laid in the hands of Shisler on the third of February, A. D. 1832.

The question was between the attaching creditors and the assignee, Stryker.

*Gilpin*, for plff., contended—That this was not such an assignment as our courts would recognize and enforce; an assignment preferring creditors which by our law was regarded as not only fraudulent but criminal. *Dig.* 139. Precisely such an assignment, if executed in this state, would be the subject of an indictment. Shall then our courts lend their aid to execute and enforce an assignment

which they would punish their own citizens criminally for making? I need not be told that such an assignment is no offence against our laws because it is executed out of our jurisdiction; the party comes here to enforce it; he asks the aid of our law to carry out a transaction which with us is deemed fraudulent and criminal; and he necessarily discloses the nature of the transaction in calling upon our courts to aid him. If an assignment out of our state be no offence against the laws of our state, so also such an assignment has no operation within our state, except by *courtesy;* a courtesy which will not be extended to a transaction not only against the general policy of our own law, but against the express letter of our statute law. As well might I be told that bigamy or polygamy would be tolerated here, and legalized by our courts, provided such marriages were contracted in a kingdom or country where it is lawful to have more wives than one. The contract is against our laws, and that is a sufficient reason for refusing in any way to give it any operation within our borders. But this assignment is fraudulent on the face of it. It not only prefers creditors, but it actually gives all the property of Bowers and Glasby to one creditor for his sole benefit. It is moreover a *voluntary* assignment, not made in the course of a judicial proceeding under the insolvent laws, and is not, so far as we know, such an assignment as would be sustained by the court and under the laws of Pennsylvania. Their decisions as to the effect of a discharge under their insolvent laws do not apply to this case. I submit, then, that the debt due from Shisler, being within this state and subject to the laws of this state, was not transfered by this fraudulent and illegal assignment to Stryker, and that the same is now subject to the attachment of the plff. 13 *Mass. R.* 146.

*Hamilton* and *Bayard*, contra. There is no doctrine in the law better settled than that the lex loci contractus shall govern; the law of the place in which the contract is made, and not that of the place where it is to be enforced, shall bind the parties, unless the contract itself has a special reference to the latter place. We are not prepared to say that an assignment or transfer of land here by a contract or instrument executed out of the state would be carried into effect here if made either against the letter or the general policy of our laws; but there is a manifest distinction between the two cases. Personal property has no situs, no location; it always follows the person, and is therefore immediately affected by his personal contracts, wherever made. Here the parties live in Pennsylvania; the contract was made in Pennsylvania; the assignment executed there; it is a Pennsylvania transaction altogether. By the law of that state such an assignment is valid; by their law it passes all the goods and chattels, rights and credits of the assignor; and if one of these rights happens to be a debt due from a citizen of our own state, our courts will recognize the validity of such an assignment in the transfer of such a debt. If good there, it is good everywhere. Does our act of assembly prohibiting such assignments as prefer creditors affect the question? It is made in reference to assignments here; it is not possible that it can extend to a transaction happening out of the state; that it can make an act criminal in Pennsylvania which is legal there. Such an assignment cannot be a breach of our laws; and if it

is in pursuance of their laws and valid there it ought to be sustained wherever the parties go to have it executed. There is but one exception to this rule: where the party goes out of the state with a view to evade the law and makes a contract for this purpose. Such a contract would be in fraudem legis, and ought not to be sustained.

*Curia advisare vult.*

*Mr. Justice Robinson* delivered the opinion of the court.

*Robinson, Justice.* On the 28th of January, 1832, John Bowers and Alban H. Glasby and John B. Striker, all of the state of Pennsylvania, executed a deed called an indenture, John Bowers and Alban H. Glasby of the one part, and John B. Striker of the other part, by which Bowers and Glasby (after reciting that by their account of the same date of the deed they stood justly indebted to Striker in $20,471 71, and that, in order to secure payment of a part thereof, they had executed to him two mortgages, with bonds and warrants of attorney, for $3,700, and to secure the balance of $16,771 71, executed a bond payable on demand, on which judgment had been entered and an execution issued, and that it was doubtful whether the mortgaged premises and the goods, wares and merchandizes in their possession were adequate to pay the full demand owing to Striker, or that if the same should be exposed to sale by the sheriff, it would be attended not only with additional expenses, but also, probably, with a sacrifice of the property) bargain, sell and convey to the said Striker all the goods, wares and merchandizes in their store and possession, or elsewhere, and all debts due and owing and to become due to them, by bond, bills, notes, book accounts, or otherwise, as also all debts due and owing and to become due to them individually; and they agree that Striker shall hold all the property granted, bargained and sold to his only use forever, being then put into the absolute possession of the same by the delivery of one piece of broad cloth in the name of the whole; and they give and grant to Striker full power and authority to dispose of all the goods, wares and merchandizes, at public or private sale, as soon as he might think proper, an inventory having been taken thereof; and they constitute and appoint Striker their attorney to demand, sue for and receive all sums of money due and owing, and to become due, and on receipt thereof, sufficient discharges to give, and to compound and agree, by taking less than the whole in any case, as their said attorney might think proper; and it was agreed that so soon as a sufficient sum of money should be realized from the sale of the effects or the collection of the debts or moneys to enable Striker to liquidate the debt owing to him as aforesaid and pay all charges attending the disposal of the effects and the collection of the debts, and also a commission of five per cent. on the amount realized, then the balance, if any, should revert and become payable to the said Bowers and Glasby, or should be applied in any other manner they might thereafter direct, provided the same should not be inconsistent with the interest of the said Stricker, or against the spirit and intention of the indenture, it being agreed that Striker should be entitled to receive interest on the whole of the debt due and owing to him from the date thereof, until his debt was liquidated. On the third of February, 1832, six days after this deed was executed, Maberry and Pollard, creditors of Bowers & Glasby,

and also citizens of Pennsylvania, sued out the above writ of attachment, and thereupon Godfrey Shisler, a debtor of Bowers & Glasby, was summoned as a garnishee, who pleaded nulla bona. Upon these facts, it has been agreed by the counsel for the plffs. and for the garnishee, that if the court shall decide that Striker is not entitled to collect and receive the debt due from Shisler, the garnishee, by virtue of the aforesaid deed, then judgment shall be rendered against said garnishee; but if the court shall decide that Striker is entitled as aforesaid by virtue of said deed, then judgment shall be rendered in favor of Shisler, the said garnishee. The counsel for the attaching creditors insisted, that as the deed preferred Striker to all other creditors, that it was void, by the act passed by the legislature of this state, in 1826, for the punishment of certain crimes and misdemeanors, in which is contained the following provision, relied on to support the objection: "If any person or persons, in contemplation of insolvency, shall make an assignment of their estate or effects, for the benefit of their creditors, and in and by such assignment shall prefer any one or more creditors, that every such assignment shall be deemed fraudulent and absolutely void, and the estate, goods, chattels, or effects, contained in such assignment shall be liable to be taken in execution or attached for the payment of the debts of such assignors, in the same manner and to as full an effect as if no such assignment had been made." This contract was made in Pennsylvania, and between citizens of that state, who entered into it expecting it to stand or fall according to the laws there. Generally speaking, the validity of a contract is to be decided by the laws of the place where it is made; but to this rule there are said to be exceptions. No people are bound to enforce in their courts of justice any contract which is injurious to their public rights, their morals, their policy, or that violates a public law. We do not consider the contract in this case as liable to any portion of these exceptions. Chief Justice Ellenborough, in 5 *East. Rep.* 131, is reported to have said that "We always import together with their persons, the existing relations of foreigners *as between themselves*, according to the laws of their respective countries, except indeed when those laws clash with the rights of our own subjects here, and one or the other of the laws must necessarily give way, in which case our own is entitled to the preference." One of the strongest cases to illustrate this rule is that in relation to the interest of money arising on contracts made in foreign countries. Thus in England the statute of Ann prohibited in positive terms taking more than five per cent. for the loan of money, and although it has been held that a breach of that law subjected the offender of it (when the offence was completed in England) to an indictment, yet it has been decided there that where interest arises by force of a contract made in America, agreeable to the laws here, the courts in England had been obliged to follow the American law on the subject. So it has been decided there that though the debt was contracted in England, but the bond taken for it in Ireland, to be paid at seven per cent. interest, it should carry Irish interest. This rule, however, is not adopted because the laws of the country where the contract is made have any binding force beyond the limits of such country, but their authority in other states is admitted from

policy and comity. The judges in Pennsylvania recognize the same influence of foreign laws in relation to contracts made in foreign states, as will be found in 4 *Dallas*, 325, 419, and it has been there decided that a debtor in failing circumstances may, by an assignment of his estate, prefer one or more creditors, provided that in all other respects it be untainted with fraud. 1 *Binney*, 502. As the deed in question was made in Pennsylvania, between citizens of that state, we cannot decide that it is fraudulent and void, because it has preferred one creditor, and thereby seems contrary to the recited act of assembly. It would unquestionably be otherwise if it should be brought forward against any of our citizens as creditors, claiming by attachment or otherwise. There is an objection to this deed, which has not been noticed in the argument, although it appears on the face of the deed itself. After having provided for the payment of only one creditor, it is agreed "that the balance, if any, shall revert and become payable to Bowers and Glasby, the assignors, or applied in any other manner they might thereafter direct." The same rule which is applied to the validity of contracts applies vice versa to their invalidity; they are generally held void and illegal everywhere, if so where made. Those provisions of the thirteenth of Elizabeth, chap. 5th, that have any bearing on cases of this kind, have been admitted as declaratory of the common law, and held in force in Pennsylvania, and most, if not all, the original states of our union. By those provisions, all conveyances to delay, hinder or defraud creditors of their remedies, are declared to be clearly and utterly void, frustrate, and of none effect, any pretence, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding. It is manifest from the recital in the deed, that Bowers and Glasby, at the time of executing it, contemplated an approaching insolvency, because it is there admitted, that "it was doubtful whether the mortgaged premises, and the goods, wares and merchandizes in their possession were adequate to pay the full demand owing to Striker;" and yet they, through the agency of their greatly favored creditor, undertake to deprive their other creditors of what should have been assigned to them, by securing to themselves the balance. Suppose this court were to decide in favor of the deed and dismiss the attachment, and there should remain a balance. To whom would Striker pay it? Certainly to Bowers and Glasby; or he would apply it to some of their relations, perhaps, as they might direct and would have the right to do according to the deed. His motive to perform what would be a duty under the deed, as a legal obligation, would be excited by feelings of gratitude. That a debtor in such an assignment cannot make a reservation, at the expense of his creditors, of any part of his property or income, for his own benefit, is clearly established by numerous authorities. Chancellor Kent says, that "it has been supposed that such a reservation, if not made intentionally to delay, hinder and defraud creditors, would not affect the validity of the residue, or main purpose of the assignment, and that if the part of the estate assigned to the creditors should prove insufficient, they might resort to the part reserved by the aid of a court of equity; but later authorities have given to such reservations the more decided

effect of rendering fraudulent and void the whole assignment; and no favored creditor or creditors can be permitted to avail himself of any advantage over other creditors under an assignment which by means of such a reservation is fraudulent on its face." From these views of this case we decide that the deed in question is in law fraudulent and void, and that Striker is not entitled to collect and receive the debt due from Shisler, the garnishee, by virtue of the said deed, and therefore render judgment against said garnishee. *Story's Conflict of Laws,* 201, 203; 3d *Bacon, Abt. by Wilson,* 294, 308; 2 *Chitty, ch.* 549, *note (f)*; 1 *Vez. sen.* 428; 2 *Atk.* 382; 2 *Kent Com.* 457, 535; 1 *Hopkins' Ch. Rep.* 373, &c.; 6 *Binney Rep.* 338; 14 *John. Rep.* 465.

Judgment for plffs. (a)

*Gilpin,* for plaintiffs.
*Hamilton* and *J. A. Bayard,* for Stryker.

*Note by the reporter.* (a) A contract shall be governed by the law of the place where it is made; if good there, it is good everywhere; and if illegal or void there, it cannot have effect anywhere. *Within themselves,* however, contracts have no force or efficacy out of the jurisdiction of the place where they are made; nor can the law of that place give them effect elsewhere: hence, whatever force is given to them in the courts of other countries arises from *comity,* and is not a matter of right. Every nation may place what limitation it pleases on the exercise of this comity, and it is by most nations held a reasonable limitation to restrict its exercise to cases where it can be extended without prejudice to its own citizens. The rule is stated by Judge Story, from the English authorities, thus—"The effects of a contract entered into at any place will be allowed according to the law of that place, in other countries, if no inconvenience will result therefrom to the citizens of that other country, with respect to the right which they demand." *(Story's Com.* 320.)

It is also true that personal property has no *situs,* but is by a legal fiction deemed to be with the owner, and affected by his contracts wherever it may in fact be found. Yet this is so only by a legal *fiction,* which yields whenever it is necessary for the purposes of justice to regard the *actual* location of the property. This general rule, therefore, is subject, in the present case, to precisely the same modification with the other: "if no inconvenience will result to the citizens of this state with respect to rights which they may demand," the property here in controversy ought to be regarded according to the legal fiction, as being attached to the domicil of Bowers & Glasby; but otherwise it should be treated according to its real location in this state. The reason is the same as in the former case. The laws of Pennsylvania, under which the assignee of Bowers and Glasby claims this property, can have no operation here; the judgments or decrees of their courts cannot reach it. On the contrary, it is entirely under the jurisdiction, and subject to the disposition and control of our laws and tribunals. When a foreigner sends his property from the place of his own residence, he voluntarily subjects it to the laws of the country where he so places it; and by his own consent, as well as on other principles, it becomes peculiarly subject to that jurisdiction. What the law protects it has the right to regulate; and in so regulating it, if our courts recognize and give effect either to the lex loci contractus or the lex domicilii, it is on a principle of comity, and subject to such restrictions as the rights and interests of our own citizens require.

The effect of assignments of property by operation of law, as in transfers under bankrupt and insolvent laws, has been much discussed in the courts of England and of this country, and the result seems to be a different doc-

ALEXANDER CRAWFORD et al. *vs.* ANN SHORT, JAMES
             SHORT et. al.

Sec. 3 of ch 106, 8 v. D. L 92 is constitutional.
An appeal from the orphans' court cannot be heard without a statement of the points
    decided
It is the duty of the party to apply for such statement.
Effect of the dismissal of an appeal without prejudice.
The superior court cannot send a mandamus to the orphans' court to compel the sign-
    ing of a bill of exceptions.

APPEAL from the orphans' court of Newcastle county.
Record.   In the case of the return of partition and valuation of the
real estate of Abraham Short, deceased.   July term, 1830.   Decree

trine on this subject in the two countries.   In England it is held that assign-
ments under the bankrupt laws transfer moveable property, wherever it
may be situate, applying the principle that personal property has no locality,
that the assignment under the bankrupt laws transfers all the bankrupt's
title as fully as he might do by a voluntary assignment or sale, and that the
assignees become the lawful owners of it, to be administered for the benefit
of the creditors.   And they give the same effect to assignments made under
the bankrupt laws of other countries, without any distinction as to citizens
and foreigners.   Thus an attachment of the property of a foreign bankrupt
by an English creditor, after bankruptcy, will not be sustained against the
assignment, with or without notice. *(Story's Com.* 345.)   And this princi-
ple is not without support in this country, *(Goodwin* vs. *Jones,* 3 *Mass. R.*
517; *Holmes* vs. *Remsen,* 4 *John C. R.* 460) but the weight of authority is
the other way.   And although it was sustained by Chancellor Kent, in the
case of *Holmes* vs. *Remsen,* he admits, in the second volume of his Com-
mentaries, page 406, that "it may now be considered as a part of the settled
jurisprudence of this country, that personal property as against creditors has
locality, and the *lex loci rei sitæ* prevails over the law of the domicil with
regard to the rule of preferences in the case of insolvents' estates." A prior
assignment in bankruptcy, under a foreign law, will not be permitted to
prevail against a subsequent attachment by an American creditor of the
bankrupt's effects found here; and our courts will not subject our citizens
to the inconvenience of seeking their dividends abroad when they have the
means to satisfy them under their own control.   It was so decided in Mary-
land in *Burk* vs. *McLean,* 1 *Harr. & McHenry,* 236, and *Wallace* vs. *Pat-
terson,* 2 *Harr. & McH.* 463; in Pennsylvania, in *Milne* vs. *Moreton,* 6.
*Binn Rep.* 353, and *Mulliken* vs. *Aughinbaugh,* 1 *Penn. Rep.* 117; in
North Carolina, (2 *Haywood's Rep.* 24;) South Carolina, (4 *McCord's Rep.*
519;) Connecticut, *(Kirby's Rep.* 313;) and also in the supreme court of
the United States, in *Ogden* vs. *Saunders,* 12 *Wheaton R.* 213.   The case
of *Holmes* vs. *Remsen* has also been ably questioned in the supreme court of
New York, in a case at law between the same parties. 20 *Johns. Rep.* 254.
The law, therefore, is fully settled, in this country, against the admitted
doctrine of the English courts, that an assignment under the bankrupt or
insolvent laws of a foreign country will not transfer the bankrupt's property,
including choses in action, in this country so as to prevent a subsequent
attachment by the bankrupt's creditors here.
But in the case before the court both the attaching creditors and the
assignees were citizens of Pennsylvania.   It was altogether a transaction
between foreigners.   Supposing such an assignment to be valid according to
the laws of that state, and that its effect there would be to transfer all the
property of Bowers & Glasby to Stryker, the question would arise whether
there was any reason why our courts should not, in the usual comity of na-

in relation to costs.  Appeal prayed and granted.  25th September, 1832.  Decree approving and confirming the return of freeholders. Appeal prayed and granted.  In superior court, November term, 1832.  Appeal from the aforesaid decrees received and filed.  "And

tions, give it the same effect here as between citizens of that state.  This point was not decided, it being rendered unnecessary by the terms of the assignment; and it may be considered as still open and worthy of grave consideration, notwithstanding the intimation which the court gave of the inclination of their opinion.

A distinction has been taken in some of the cases on this subject between voluntary conveyances and conveyances *in invitum*, by the mere operation of law, as in cases of bankruptcy and insolvency.  *(Kaims on Equity, b.* 3 *ch.* 8, *s.* 6; *Story* 6 *Com.* 346.)  But it does not appear to be established. Chancellor Kent, in *Holmes* vs. *Remsen*, thought himself bound to give effect to the assignment, "because it is equivalent to a voluntary act of the party over his own property."—"Every man's assent is presumed to a statute."  And Chief Justice Parsons, in *Goodwin* vs. *Jones*, "considered the assignment under the bankrupt laws as the party's own act, since it was in the execution of laws by which he was bound, and since he voluntarily committed the act which authorized the making it."  The distinction is not between a bona fide sale for a valuable consideration (which would certainly be good against a subsequent attaching creditor) and a statutory transfer; but it is between a voluntary assignment in contemplation of insolvency and a compulsory assignment under the operation of the insolvent laws; and no such distinction appears to be sustainable on principle or sustained by authority.  On the contrary, the supreme court of Massachusetts decided, in *Ingraham* vs. *Geyer*, *(*13 *Mass. Rep.* 146*)* that a *voluntary* assignment by a debtor of all his property, made in Pennsylvania, for the benefit of creditors *generally*, should not prevail over a subsequent attachment, because such assignment would be void by the laws of Massachusetts, if made there, as being in fraud of creditors.  And *Fox* vs. *Adams*, 5 *Greenleaf's Rep.* 245; *Oliveir* vs. *Townes*, 14 *Martin's Louis. Rep.* 93; and *Norris* vs. *Mumford*, 4 *Martin's Louis. R.* 20, are to the same effect.

The principal case was much stronger.  It was not the case of an assignment for the benefit of other creditors than a single preferred one; and any assignment preferring creditors is, by the express terms of our act of assembly, declared to be fraudulent and void, and the property intended to be transferred thereby remains liable to be taken in execution or attached for the payment of the assignor's debts, in the same manner as if no such assignment had been made. *(Dig.* 140.*)*  Can our courts in any manner give effect to such an assignment?  It is not pretended that our laws can make this transaction illegal where it was executed, if by the laws of that place it is authorized; but if the aid of our courts is invoked to give it effect within our jurisdiction and over property which it cannot reach unless our courts recognize its validity here, could they do so consistently with a just regard to our own laws?  In *Forbes* vs. *Cochrane*, 2 *Barn & Creswell* 448, 471, Mr. Justice Best says that in cases turning on the comity of nations it is a maxim, that the comity cannot prevail in cases where it violates the law of our own country, the law of nature, or the law of God.  And all the authorities sustain the position of Chancellor Kent, (2 *Com.* 461) "that when the *lex domicilii* and the *lex fori* come in direct collision, the comity of nations must yield to the positive law of the land.  In tali conflictu magis est ut jus nostrum quam jus alienum servemus."  And the supreme court of Louisiana has adopted the rule, that whenever, in a conflict of laws, it is a matter of doubt which should prevail, the court which decides will prefer the law of its own country to that of the stranger.  (17 *Martin's Rep.* 596.)